THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SANTIAGO SANDOVAL, Defendant-Appellant.

Second District   No. 2—87—0309

Opinion filed January 13, 1989.

REINHARD, J., dissenting.

Robert P. Will, Jr., of Will & Briscoe, Ltd., of Waukegan, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers, John X. Breslin, and Nancy Rink Carter, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Santiago Sandoval, was found guilty of two counts of criminal sexual assault (penis in anus, penis in mouth) (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1)) and battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—3) as a lesser-included offense; he was found not guilty by the jury of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(2)) and unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3(a)). Defendant was sentenced to 15 years' imprisonment and he appeals, contending: (1) he was not proved guilty beyond a reasonable doubt; (2) erroneous and prejudicial evidentiary rulings in trial require reversal; (3) the verdicts of the jury were logically and legally inconsistent; and (4) the sentence was excessive as defendant had no prior criminal record except for minor traffic offenses.

The evidence at trial disclosed that the complainant and defendant met during the summer of 1986 and lived together in a Waukegan apartment for about three months, together with complainant's two-year-old son from a former marriage. The complainant testified defendant would become violent if she refused to have sexual relations with him and that on several occasions he inflicted physical abuse on her. She and her child eventually moved out in October 1986.

Subsequently, she started to see defendant again and for two months everything was fine. On New Year's Eve, the couple went out for the evening, first to see his sister-in-law in a Waukegan hospital, who had a baby; defendant's family was there too. They then

went to a friend's home in Waukegan to a party and left there at 10:30 p.m. to go to Cagney's bar in Kenosha. The complainant testified that defendant learned at Cagney's that she had recently been out with a man named Tony, but had lied to defendant about it. He accused her of sleeping with Tony, which she denied. Defendant calmed down after a while, and they shared a bottle of champagne before leaving the bar to drive to defendant's apartment.

The complainant further testified that in his apartment they sat on the couch together and defendant again accused her of having sexual relations with the other man. As he became angry, she started to leave and he took her arm and told her to sit down on the couch. Complainant stated she was scared as defendant became increasingly angry and emotional. He said he was going to have sex with her one last time and pushed her to the floor, getting on top of her. He then pushed her into the bedroom and, as she suspected defendant sought anal sex, the complainant begged him not to do it that way because she had told him before that it hurt and she didn't like it that way. She testified that she had had anal sex with defendant on two prior occasions and, in response to a question by the assistant State's Attorney, stated she had never had anal sex with any other person.

According to the complainant, a struggle followed on the bed in which defendant hit her repeatedly on the back of her head, causing a bruise on her ear and a lump on her head. He penetrated her anus with his penis and thereafter told her to perform oral sex upon him. She refused, but acquiesced when he reached into a closet and she believed defendant might have a gun. This was followed by another sequence of anal and then oral sex. The next day she could not sit.

When the complainant noticed defendant had nothing in his hand, she got up from the bed upon which they were lying and ran out the apartment door to the floor above where she pounded on an apartment door. She told the man who answered that she had been raped and asked to use the telephone; complainant called the police and said she had been raped.

In his testimony at trial, defendant's version of the events that night was substantially different than was the complainant's. He stated they had had anal sex a dozen times prior to the incident in question and that she had never expressed displeasure and sometimes initiated it. On New Year's Eve, after they arrived at his apartment, the complainant started apologizing for seeing another man. He told her that he wanted nothing more to do with her, but she became aggressive sexually and he slapped her with the back of his hand to keep her away. Eventually, they left the couch and went

into the bedroom and disrobed and the complainant initiated sexual activity, including anal and oral sex. Defendant testified he was not receiving any satisfaction and he told her their relationship was over and he couldn't trust her. When defendant directed her to dress and leave his apartment, she threatened him and stormed out. Defendant denied threatening complainant in any way and stated he had never owned a gun or had one in his apartment.

In addition to the testimony of these parties at trial, evidence was offered to impeach both defendant and complainant, character evidence relating to defendant was admitted, as was some physical evidence.

■ We note initially that defendant has waived consideration of the reasonable doubt and inconsistent verdict issues for failure to comply with Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)). That rule requires, *inter alia*, that argument in an appellant's brief shall contain his contentions and the reasons therefor, with citation of the authorities relied on. It provides further that points not argued are waived. (107 Ill. 2d R. 341(e)(7).) While defendant does argue facts he considers relate to the reasonable doubt question, he offers no supporting authority. Defendant's argument directed to the inconsistent verdict issue consists of the statement that, "If defendant was not guilty of Unlawful Restraint, he logically could not be guilty of Criminal Sexual Assault." He offers no citation of authority in support of this argument. We decline to research these issues for defendant and his counsel and will not address them. *People v. Ramirez* (1983), 98 Ill. 2d 439, 472, 457 N.E.2d 31; *People v. Deacon* (1985), 130 Ill. App. 3d 280, 294, 473 N.E. 2d 1354.

We consider first defendant's contention that the trial court erred by improperly limiting cross-examination of the complainant relating to her testimony as to her prior sexual activity with other persons.

During direct examination of her by the assistant State's Attorney, the complainant testified, in response to his questions, that she had never had anal sex with anyone else prior to her relationship with defendant. On cross-examination, when defendant's counsel sought to lay a foundation for impeachment on this issue, the judge noted that further foundation was not necessary since the witness had already testified she had not had anal sex with anyone else. The State objected to such inquiry on the grounds that the rape shield statute (Ill. Rev. Stat. 1985, ch. 38, par. 115—7(a)) barred inquiry as to the prior sexual activity of the complainant with others. The judge stated that as the door had been opened, the defense could bring in another witness to impeach the complainant about the anal sex.

Subsequently, however, at the commencement of defendant's case, the trial court reconsidered its prior ruling. Defendant's counsel made an offer of proof that Roosevelt Abron would testify in impeachment of the complainant that he had anal sexual relations with her, that she initiated it and enjoyed it. The trial court ruled that the offered testimony was precluded from evidence by the rape shield statute. When instructing the jury, the court admonished it to disregard complainant's testimony she had not had anal intercourse with anyone other than defendant, stating that the testimony was improper and was stricken.

Defendant argues that the refusal to permit him to challenge the complainant's testimony denied his constitutional right to confront and cross-examine the witnesses against him and requires a new trial. The rape shield statute states in pertinent part:

> "In prosecutions for *** criminal sexual assault, *** the prior sexual activity or the reputation of the alleged victim is inadmissible except as evidence concerning the past sexual conduct of the alleged victim *with the accused.*" (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 115—7(a).)

The State argues that this language is absolute and does not allow for admission of evidence that complainant had anal sex with a third party. While neither the parties' nor our research has disclosed an Illinois case directly on point, we do not interpret the statute to be so broad in scope as is urged by the State. Although the statute on its face does not establish any exceptions to the rule it creates, examination of the factors which prompted the rule leads to the conclusion that it does not preclude an exception for admission of the impeaching evidence offered by defendant in this case.

■ The policy underlying the rape shield statute is to prevent the defendant from using evidence of the complainant's past sexual activity with third persons to harass and humiliate her and shift the jury's attention to irrelevant issues. The statute also aids law enforcement by encouraging victims to report criminal sexual assaults without fear of exposure of the details of their past sexual activity. (*People v. Ellison* (1984), 123 Ill. App. 3d 615, 626, 463 N.E.2d 175; *People v. Cornes* (1980), 80 Ill. App. 3d 166, 175-76, 399 N.E.2d 1346.) According to the *Cornes'* court:

> "The legislature was acting well within its powers in enacting reasonable legislation intended to eliminate the cruel and abusive treatment of the victim at trial by precluding the admission of prejudicial and irrelevant material and to promote the lawful administration of the criminal justice system." (*Cornes,*

80 Ill. App. 3d at 815.)

There is no doubt that the statute was meant to protect the alleged victim in sexual assault cases. Nor is there a question that, because of the statute, an alleged victim's sexual history cannot be used against her when that history is not relevant. In the present case, however, the victim, by her own action at trial, rendered her past sexual activities relevant and thus admissible.

■ We note initially that there is nothing in either the language of the rape shield statute or the policies which gave rise to it which expressly precludes a victim from introducing evidence regarding her own past sexual activities with third parties, or the lack of any such activities. Since the statute was enacted for the benefit of rape victims, we conclude that such victims may choose to forego that benefit and offer evidence which would otherwise be prohibited by the statute. Consequently, complainant in this case was not restricted by the statute from asserting that she had not had anal sex with any partners other than defendant. But cf. People v. Sales (1986), 151 Ill. App. 3d 226, 231, 502 N.E.2d 1221.

The nature of the evidence in this case must be examined in order to understand the significance of the testimony defendant sought to impeach. Complainant and defendant were the only direct witnesses to the alleged sexual assault, and their conflicting accounts of the incident constituted the primary evidence presented at trial. While testimony was given that complainant made a prompt complaint of rape to a neighbor of defendant, the record contains little other corroboration of her testimony. No medical evidence was presented relating to any bodily injury of complainant, despite her testimony that she could not sit the next day and that she suffered from swelling and bruising on and about her head. The photograph of the bruise allegedly inflicted upon her ear reveals, at best, only slight discoloration, not inconsistent with defendant's admission that he backhanded her. Nothing was offered to support complainant's testimony that her panties were torn when defendant pulled them down. None of the police officers noticed the tear when the panties were collected as evidence. Although one of her earrings was found on the floor, broken, complainant did not know when it had fallen from her ear or how it had been broken. Neither a gun nor any evidence of a gun was found in defendant's apartment. No neighbors testified that they had heard yelling or sounds of a struggle. In sum, the State's case stood on complainant's essentially unsubstantiated testimony.

■ Since there was so little corroborating evidence, the jury's verdict depended almost exclusively on who it found to be the most

believable of complainant and defendant. It was in this context that complainant asserted she had never had anal sex prior to having it with defendant. This claim was obviously intended to underscore her testimony that on the occasion in question she feared anal sex because it had caused her a great deal of pain in the past and that, although she pleaded with defendant not to do it that way, he penetrated her anus by use of force, as charged in the indictment. Stated another way, complainant made a statement regarding her sexual history in order to bolster her own credibility in the eyes of the jury. In a case that turned on the credibility of the parties, it seems appropriate that defendant be given the opportunity to challenge complainant's testimony. In this sense, the refused evidence which might have impeached complainant's testimony became highly relevant. The rape shield statute, as noted earlier, prohibits evidence of past sexual conduct *when such conduct is irrelevant to the issues.* Since defendant's proffered evidence was very relevant to the issue of complainant's credibility, its admission was not here prohibited by the statute.

■ To interpret the statute otherwise would encourage witnesses in these circumstances to testify without regard for the truth, secure in the knowledge that they were insulated by the rape shield statute from confrontation with any untruths they may choose to express. A shield such as this was never meant to be created by the statute. It is precisely this result which is avoided by the language in *Cornes* and *Ellison* that the evidence to be barred by the statute is that which is not relevant to the case before the court, but is introduced anyway for the sole purpose of humiliating the victim. Where the evidence is relevant and is introduced, not to harass the witness but only in a defensive response to the alleged victim's own initiative, the statute does not preclude an exception to the general protective umbrella it places over victims of sexual assault. Once a complainant decides to address her own past sexual conduct, or lack of it, she relinquishes the statutory protection and risks a challenge to the truthfulness of her version of that conduct.

■ Since credibility of the witnesses was the crucial issue in the case, defendant was severely prejudiced when he was precluded from impeaching complainant's testimony about her past activity. Complainant's claim stood intact before the jury and was undoubtedly persuasive that she was also telling the truth about the alleged assault on her by defendant. Had defendant been able to introduce his impeaching evidence regarding complainant's past, the State's case might have been seriously impaired. As it was, however, it was defendant's defense that was erroneously impaired, and he must be

given a new trial.

The error was not corrected by the oral instruction to the jury to disregard complainant's statement. Complainant had already been heard and her testimony already had its bolstering effect. Prior to the instruction, the jury was given the impression that, at the time in question, the victim found anal sex painful and an act to be feared because she had only done it twice before with defendant and because she had never done it with anyone else. Merely telling the jurors to not consider complainant's testimony relating to her lack of such conduct with others would not have significantly altered that impression.

■ Defendant has urged us to consider this matter on constitutional grounds. However, constitutional questions will not be decided by a reviewing court if the matter can be disposed of on other grounds. (*People v. Fleming* (1971), 50 Ill. 2d 141, 144, 277 N.E.2d 872; *People v. Davis* (1977), 50 Ill. App. 3d 163, 167, 365 N.E.2d 1135.) Since the case before us has been resolved through statutory construction, we need not address the constitutional issue. See, however, *Olden v. Kentucky* (1988), 488 U.S. ___, 102 L. Ed. 2d 513, 109 S. Ct. 480.

■ An issue similar to the first is raised by defendant regarding testimony elicited from complainant on cross-examination as to the effect on her life of the incident with defendant. When asked if it had changed her relationship with men, complainant responded that she had not dated anyone since the occurrence. She was then questioned by defendant's counsel about being in a specific location at a time certain in the company of a date. She again responded that she had not been on a date. Defense counsel later attempted to impeach this testimony with a rebuttal witness who would have testified that he saw complainant, just a few days before the trial began, "hanging all over a gentlemen friend of hers" at a bar. The trial court refused to admit this evidence, and defendant argues that he was once again improperly denied the right to confront the complainant. The State responds that the evidence was collateral and irrelevant and correctly excluded. In our view, the defendant should have been allowed to impeach complainant as to this matter.

As discussed earlier, this case came down to an evaluation by the jury of the credibility of complainant and defendant. Complainant testified that defendant's assault had a great effect on her in that she had not dated at all since that night. If the jury believed this testimony, it was likely to believe that the reason she had not dated was because she had had sex forced upon her by defendant. Thus, any

proof that complainant was not honest about the aftermath of the alleged assault would have been relevant to the believability of her accusations against defendant and should have been admitted. Exclusion of defendant's impeaching evidence on this issue compounded the prejudice he suffered from the exclusion of evidence under the rape shield statute as described earlier.

Although we consider the issue to have been waived, defendant has argued that he was not proved guilty beyond a reasonable doubt. Mindful of the directive in *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366, we have examined the evidence introduced against defendant and find that, if believed by the jury, it was sufficient to show beyond a reasonable doubt that he was guilty of criminal sexual assault as charged, as well as the lesser-included offense of battery. Our finding raises no inference as to defendant's guilt or innocence which would be binding on retrial, but is meant only to protect him from the risk of being subjected to double jeopardy.

Because of the errors made at trial we reverse defendant's convictions and remand for a new trial. We need not consider the issues he raises as to the sentence imposed.

Reversed and remanded for a new trial.

WOODWARD, J., concurs.

JUSTICE REINHARD, dissenting:

I respectfully dissent. During the direct examination of the complaining witness by the assistant State's Attorney, the complainant testified, in response to the prosecutor's question, that she had never had anal sex with anyone else prior to her relationship with defendant. The plain language of the rape shield statute clearly prohibits the admission of any evidence regarding a victim's prior sexual activity other than with defendant. (Ill. Rev. Stat. 1985, ch. 38, par. 115—7(a).) This language has been interpreted to bar admission of a victim's lack of sexual activity with anyone other than the defendant when offered by the State. (*People v. Sales* (1987), 151 Ill. App. 3d 226, 231, 502 N.E.2d 1221.) Such an interpretation is consistent with the purpose of the statute, which is to prevent evidence of a victim's prior sexual activity, other than with defendant, from being introduced into a case. Thus, such evidence was incompetent and it was improper in this case for the State to introduce complainant's testimony that she had not had anal intercourse with anyone other than the defendant.

Nevertheless, defendant failed to object and, instead, attempted to attack this testimony by cross-examination of the complaining witness and by the introduction of a witness who would testify that he had anal sex with the complainant. While defendant was barred by the trial judge from offering such evidence on the basis of the rape shield law, the court later did instruct the jury to disregard complainant's testimony that she had not had anal intercourse with anyone other than defendant and to give it no weight. The court further stated that the testimony was improper and was stricken. Under these circumstances, I would find that the specific instructions to the jury by the court to disregard this evidence was within its discretion and avoided prejudicial harm.

It has been stated by our supreme court in *People v. Newman* (1913), 261 Ill. 11, 103 N.E. 589, that "[t]he proper defense against incompetent evidence is an objection, and its introduction without objection does not make evidence competent to contradict it. Parties can not, by mere silence or consent, create a right to try an immaterial issue when they might have had the adverse evidence kept out or stricken out." (261 Ill. at 15, 103 N.E. at 591.) The appellate court in more recent decisions, however, has adopted the rule of "curative admissibility" whereby an opponent may reply with similar evidence if, in the discretion of the trial judge, it is needed to eradicate an unfair prejudice which might ensue from the original evidence. *People v. Higgins* (1979), 71 Ill. App. 3d 912, 930-31, 390 N.E.2d 340.

McCormick on Evidence §57, at 133 (Cleary 2d ed. 1972) explains this rule:

> "If again the first incompetent evidence is relevant, or though irrelevant is prejudice-arousing, but the adversary has failed to object or to move to strike out, where such an objection might apparently have avoided the harm, then the allowance of answering evidence should rest in the judge's discretion. He should weigh the probable influence of the first evidence, the time and distraction incident to answering it, and the possibility and effectiveness of an instruction to the jury to disregard it. However, here various courts have indicated that introduction of the answering evidence is a matter of right."

Under the "curative admissibility" principle, defendant's evidence to rebut the State's incompetent evidence was properly barred by the trial court. The trial court instructed the jury to disregard the complainant's testimony on this point. I do not agree with the majority

that the jurors would be unlikely to heed the court's specific instructions. Furthermore, the single question the prosecutor asked the complainant on this subject was not repeated nor is the answer, later stricken, sufficiently prejudicial to allow the defendant to rebut this incompetent evidence. The trial court did not abuse its discretion in proceeding in the manner it did.

I also disagree with the majority's decision that, following testimony elicited from the complainant on cross-examination as to the effect on her life of the incident with defendant, the trial court erred in not allowing defendant to impeach complainant as to this matter. A cross-examiner may not impeach a witness on a collateral matter and must accept the witness' answer. (*People v. Collins* (1985), 106 Ill. 2d 237, 269, 478 N.E.2d 267.) The majority reasons that because complainant's credibility is at issue any impeachment of complainant as to the impact of the incident on her life would affect her credibility and, therefore, such inquiry is a noncollateral matter. Such an analysis would be true, however, whenever a party attempts to impeach a witness and would render all such inquiries noncollateral. The test to be applied in determining if a matter is collateral is whether the matter could be introduced for any purpose other than to contradict. (*Collins*, 106 Ill. 2d at 269, 478 N.E.2d at 281.) Because the issue here is whether complainant was forced to have anal and oral sex with defendant against her will, the question to the complainant on cross-examination by defendant as to the incident's effect on her life is an inquiry which has no purpose in this case other than to contradict. As the application of the "collateral" test is best left largely in the control of the trial judge, subject to his abuse of discretion (*Collins*, 106 Ill. 2d at 269-70, 478 N.E.2d at 281), I would find that the trial court's ruling refusing to allow impeachment on this collateral matter was not an abuse of discretion.

For the foregoing reasons, I dissent and would affirm the defendant's conviction.