THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAN UZELAC, JR., Defendant-Appellant.

First District (1st Division)   No. 86—0780

Opinion filed December 19, 1988.—Modified on denial of rehearing February 27, 1989.

Alan D. Goldberg, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Marie Quinlivan Czech, and Jean T. McGuire Quinn, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINLAN delivered the opinion of the court:

The defendant, Dan Uzelac, Jr., was tried by a jury on charges of rape, deviate sexual assault, and armed robbery in the circuit court of Cook County. The jury returned a verdict of guilty on all three counts and judgment was entered on that verdict. The trial judge subsequently sentenced the defendant to a 12-year term on the armed robbery count, a 25-year term on the rape count, and a 25-year term on the deviate sexual assault count; all sentences were ordered to run concurrently. The defendant has now appealed his convictions and sentences.

On June 23, 1983, at approximately 9 p.m., 18-year-old Linda Jellema and her eight-year-old sister, Beth, were at an ice cream shop two blocks from their home. Linda saw the defendant, who was on a racing-type bicycle, ride past the shop three times. When Linda and her sister left the shop, they cut through a parking lot and went down an alley to get to their home. In the alley, Linda again saw the defendant, who was about 10 feet from her, at that time. Although it was nearly dark, she recognized him as the man she had seen on the bicycle because there was a streetlight about 90 feet away. The defendant then confronted Linda and demanded her money. When she did not comply, he pulled out a six-inch hunting knife, took Linda and her sister Beth to an area between two garages and told Beth to crouch down near the front of the garages. He held the knife to Linda's neck, and directed her to remove her pants. She refused. At that point the defendant demanded that she let him look at her and feel her, and threatened to hurt Beth if she resisted further. Defendant then forcibly removed Linda's pants and shirt, pulled his own pants down, and made her commit an act of oral copulation. When she struggled, he pushed her down and forced her to perform sexual intercourse with him. When Linda screamed, the defendant again threatened to hurt Beth if she continued. Shortly thereafter, the defendant left.

Linda identified her attacker to the investigating officers as a white male, 5 feet 10 inches to 6 feet tall, overweight, with dark, curly, shoulder-length hair, wearing blue jeans, a T-shirt, and a button-down shirt. Following the attack, Linda was taken to a local hospital where she was examined. The doctor who examined her, Dr. Herscovitch, later testified at trial that Linda was bruised on her back and buttocks, that her vaginal area was red, and although her hymen was intact, that vaginal entry could still have occurred since whether the hymen breaks depends upon the extent and force of penetration. A forensic scientist, Judy Welch, also testified at trial to

her examination of vaginal, anal, and mouth swabs taken from Linda as well as her examination of Linda's underpants and the pubic hair samples taken from her underpants.

Later as a result of an investigation of similar attacks in Lansing, Illinois, the Lansing police department, on June 30, 1983, issued a warrant for defendant's arrest. But, because the defendant lived in Portage, Indiana, it was necessary to institute extradition proceedings, which were concluded on January 20, 1984, when the defendant waived extradition.

The Lansing police had shown Linda six photos of different men on June 28, 1983, including a nine-year-old picture of the defendant in which he had short, light-colored hair. Linda did not identify the defendant as her attacker at that time, but reiterated that her attacker had shoulder-length, dark-colored hair. Subsequently, on January 20, 1984, Linda viewed a lineup in which the defendant had been placed with four other men of the same approximate height and weight. All of the other men in the lineup were Lansing police officers, but this was not known to Linda. Linda identified the defendant at the lineup.

Shortly thereafter, defendant was indicted, and the case was set for a jury trial on charges of rape, deviate sexual assault, and armed robbery. The trial court denied defendant's pretrial motions, determined that Linda's lineup identification at the police station was admissible, and further found that evidence of prior crimes could be admitted under a *modus operandi* theory.

At trial, Linda testified and again identified the defendant in court. Ms. Welch, the forensic scientist who also testified at trial, stated that the blood fluid-typing tests she had performed resulted in a finding that the defendant could not be excluded as a source of the semen found in the examination of Linda. However, she noted that the potential source group constituted 80% to 90% of the Caucasian population. The testing of the pubic hairs found in Linda's underpants, she said, was inconclusive.

The evidence of a prior attack committed by the defendant was admitted on the basis that it was part of the *modus operandi* of the defendant. The evidence was introduced through the testimony of the victim in the prior attack, Joanne Veenstra, and an eyewitness to the prior attack, Jacqueline O'Connell. Joanne Veenstra testified that on May 23, 1983, at about 10 p.m., she entered an alley near her home in Lansing to park her car. As she got out of her car, she saw an overweight man ride by on a 10-speed bicycle, whom she said she saw clearly since the alley was lighted by a light on her garage. As

she exited the garage, the man grabbed her from behind, held a six-inch knife to her throat, and demanded her money. He told her to pull down her pants and threatened to kill her. She complied, and when he moved around in front of her, they struggled over the knife. At that time, Joanne said she realized the man was wearing a long, dark, curly-haired wig, and had blondish-brown hair underneath.

At about this time, Joanne's neighbor, Jacqueline O'Connell, said that she heard a bike making a clicking sound near the back of her house. An hour earlier, she had been getting out of a car on the street in front of her house and said she noticed a large "ugly" man on a 10-speed bike ride by. She saw his face, which was illuminated by a streetlight, as he rode past her in the street about eight feet from where she stood. After she went into her house, she again saw him on the bicycle, circling in front of her house. When she heard the clicking sound of a bicycle coming from the direction of her backyard, she looked out of her back window and saw two persons next to a van in the neighbors' yard. At that point, she called the police and, thereafter, turned on an outdoor floodlight when she heard a scream. When she turned on the floodlight, she stated that she saw two persons; they were her neighbor, Joanne Veenstra, and the man she had seen on the bike. She then identified the defendant in court as the man she had seen on the bicycle that night.

The defendant asserted an alibi defense at trial, stating that on June 23, 1983, he was at home working on his car from about 8:45 p.m. to 9:15 p.m. He claimed he took a bath, ordered a pizza, went to pick up the pizza, and returned home. The defendant admitted in his testimony that he owned a 10-speed bicycle. A neighbor of the defendant testified that on that same evening, defendant had played basketball with him until 8:30 or 8:45 p.m.

After the trial the jury returned a finding of guilty and, as noted, judgment was entered on that verdict and the defendant was sentenced to concurrent terms of 12 years' imprisonment for armed robbery, 25 years for deviate sexual assault, and 25 years for rape.

■ Initially in his appeal, the defendant contends that the State allegedly made numerous errors in its closing argument. He asserts that these errors individually or when taken together constituted reversible error and include: an improper reference to the victim's virginity, an improper assertion that the victim would be punished if there was an acquittal, and an improper statement of the burden of proof; the State also allegedly made improper inflammatory remarks concerning the fluid-typing evidence and made improper comments about the defendant's alleged resistance to extradition.

In closing arguments, a prosecutor is accorded wide latitude, and the scope of permissible argument is within the sound discretion of the trial judge. (*People v. Lasley* (1987), 158 Ill. App. 3d 614, 511 N.E.2d 611.) The complained-of remarks must be examined in the context of the prosecutor's argument as a whole, but all remarks made in the closing argument must be based upon the evidence presented or the reasonable inferences from such evidence. (*People v. Cisiewski* (1987), 118 Ill. 2d 163, 514 N.E.2d 970; *People v. Clay* (1984), 124 Ill. App. 3d 140, 463 N.E.2d 929.) However, improper remarks made by the prosecutor do not rise to the level of reversible error unless they constitute a material factor in the defendant's conviction. *People v. Shum* (1987), 117 Ill. 2d 317, 512 N.E.2d 1183; *People v. Kim* (1986), 148 Ill. App. 3d 191, 498 N.E.2d 831.

■ Furthermore, any alleged errors in a criminal trial must be preserved for appeal by timely trial objections and inclusion in a written motion for a new trial. If issues are not so preserved by timely trial objections, any later contentions of alleged error will normally be deemed to have been waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124; *People v. Sales* (1986), 151 Ill. App. 3d 226, 502 N.E.2d 1221.) This requirement for the preservation of issues on appeal was recently restated by our supreme court where the court set forth the limits on the review of issues that were not properly preserved by timely oral and written trial objections. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) The *Enoch* court specifically held:

> "[W]hen the defendant fails to comply with the statutory requirement to file a post-trial motion, our review will be limited to constitutional issues which have properly been raised at trial and which can be raised later in a post-conviction hearing petition (Ill. Rev. Stat. 1983, ch. 38, par. 122—1), sufficiency of the evidence, and plain error. By limiting our review in cases where no post-trial motion is filed, we will promote judicial economy and finality of judgments. We will, at the same time, be protecting the integrity of the judicial system and the rights of criminal defendants." *Enoch*, 122 Ill. 2d at 190, 522 N.E.2d at 1131-32.

■ We consider first the defendant's claim that the prosecutor improperly argued that the victim was a virgin. He contends that the reference constituted reversible error since the prior sexual activity of a victim is inadmissible under the provisions of the rape shield statute (Ill. Rev. Stat. 1985, ch. 38, par.115—7(a)), and that the reference here had no evidentiary basis. In support of his contention, the

defendant cites *People v. Sales* (1986), 151 Ill. App. 3d 226, 502 N.E.2d 1221, where the court, in a similar context, found remarks concerning the victim's virginity to be reversible error. The State, on the other hand, asserts that the *Sales* case is distinguishable and that, in any event, any alleged error was waived by the defense's failure to raise the issue in its post-trial motion, and that, additionally, the statements were based on reasonable inferences from the evidence.

We agree with the State's analysis and find that this issue was waived. It was not specifically noted in the defendant's motion for a new trial, and under the mandates set down by our supreme court in *Enoch*, unless the error here is plain error, it must, consequently, be deemed waived. (*Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124.) We do not agree with the defendant's assertion that the reference to the victim's virginity rose to the level of plain error. The reference to virginity, although itself improper, was based on the testimony of the doctor who examined Linda Jellema and was admitted without objection. The doctor had testified here that Linda Jellema's hymen was intact, although the condition of the vaginal area was consistent with penetration. Obviously, a reasonable inference that could be drawn from this evidence was that the victim was a virgin. (See *People v. Dotson* (1981), 99 Ill. App. 3d 117, 424 N.E.2d 1319 (evidence of abrasions to hymen supports inference that victim was a virgin).) Moreover, any error that occurred was harmless because the prosecutor did not dwell upon the issue of the victim's virginity. The only reference to the victim's virginity consisted of the following brief reference: "[W]hen she was attacked she was a virgin. She was a virgin." Defense counsel objected, the court overruled the objection, and no further reference was made to the victim's virginity throughout the course of closing argument.

Further, we disagree with the defendant's contention that *Sales* supports his argument that any reference to a rape victim's virginity is reversible error, and find, as the State contends, that *Sales* is distinguishable. (See *Sales*, 151 Ill. App. 3d 226, 502 N.E.2d 1221.) In *Sales*, while the court found that the reference to the victim's virginity was improper, the reversal there was based upon cumulative errors in the record, including those in a lengthy closing argument concerning the defendant's race and his alleged homosexuality. Here, unlike the situation presented in *Sales*, there was no such prejudicial argument and the testimony which inferred Linda Jellema's virginity was elicited without objection during proper testimony of the doctor who had examined the victim. Hence, the assertion of the victim's

virginity by the prosecutor based upon that testimony, while improper argument, did not by itself, under these circumstances, amount to reversible error.

■ Defendant next contends that the prosecutor's statements, in closing argument, that if the jurors acquitted defendant they would make Linda Jellema a "victim again" and would be "punishing her," constituted reversible error because these comments expressed the prosecutor's personal opinion and were based on matters not in evidence. The State again responds that any alleged errors were waived by the defense, and that, in any event, the remarks were based on admitted evidence and were in response to the defense counsel's remarks in its closing. We find that these remarks were waived by defense counsel's failure to object and, further, find that these comments did not constitute reversible error and were not, as the defendant contends, simply an outrageous appeal to the passion and prejudice of the jury.

■ ■ Next, defendant argues that the State distorted the evidence when the State claimed that the fluid-typing evidence put the defendant in the source group, and then asserted that this evidence "puts him right in." In addition, the defendant complains that the State also misstated the evidence when it claimed that defendant resisted extradition. Defendant argues here that there was no evidentiary basis for either of those remarks. The State, however, contends that any alleged error concerning the police officer's testimony on extradition was waived because, although the defense made an objection which was overruled, the objection was not later specifically included in the defendant's motion for a new trial. The State further argues that the remarks about the fluid-typing evidence were proper because they were based on evidence presented by the testimony of Ms. Welch, which was received without objection. Finally, the State observes that the remarks about the defendant's extradition were also based upon reasonable inferences from the evidence presented, and, thus, did not constitute reversible error even if the objection was not waived. We agree with the State.

In this case, the prosecutor's remarks in closing argument concerning both the fluid-typing evidence and the extradition testimony were proper. The remarks were based upon evidence and testimony which was properly admitted by the trial court. Ms. Welch's testimony was admitted without objection and, in addition, any objection to the extradition testimony was waived by defense counsel's failure to include its specific objection to this testimony in its post-trial motion, as required by our supreme court in *Enoch*. See *People v.*

*Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

▌ The defendant next argues that the State's closing argument contained repeated inflammatory appeals to the jurors' emotions. We find, however, that these alleged comments of the prosecutor, which were not specified in the post-trial motion, were not of such gravity as to constitute reversible error. Moreover, a fair portion of the comments complained of were not objected to, and of the ones that were objected to, a number of the defendant's objections were sustained.[1] Where the objections were sustained, the court's actions cured any error, and the prosecutor thereafter moved on to other matters. Additionally, where the defense's objections were overruled, we find that those were remarks properly within the scope of closing argument. As noted, the trial judge is accorded broad discretion in ruling on a prosecutor's closing remarks, and the court here did not abuse this discretion.

▌ The defendant next contends that the State made arguments shifting the burden of proof in the case to the defendant. Specifically, the defendant argues that the prosecutor referred to the pizza receipt admitted in the defendant's case as the defendant's whole case and that the defendant lacked any evidence to support his claimed alibi. The State, conversely, argues that these remarks were within the scope of proper argument, because they merely questioned the validity and the believability of the defendant's alibi. We agree. At trial, the judge overruled the defendant's objection to this argument after a sidebar on the matter. Given the wide latitude accorded prosecutors in closing argument, as well as the nature of the alleged improper remarks, we find that the court did not abuse its discretion when it overruled the defendant's objection and allowed the argument.

▌ ▌ The defendant also argues that the trial court erred when it admitted evidence of the prior attempted rape committed several weeks earlier. This evidence was allowed here under the the-

---

[1]The defendant takes issue with about 11 different matters involved in the prosecutor's closing argument. These included matters where no objection was made at trial, *e.g.*, the prosecutor's remarks concerning Ms. Jellema's ordeal at trial and concerning the effect of the incident on the victim's family; matters where objections were made by the defense and sustained by the trial court, *e.g.*, the prosecutor's comments concerning defendant's actions or gestures during trial and comments about defendant's efforts to hide from authorities; and finally, matters to which objections were made by the defense and overruled by the trial court, *e.g.*, those involving the defendant's attitude while testifying, the victim's virginity and her marriage plans. However, none of these taken together or separately amounted to reversible error under the circumstances here.

ory of *modus operandi*, since the defendant was also identified as the offender in another case. The general rule is that evidence of other crimes is inadmissible in a criminal case because of the high risk of prejudice, but an exception to this general rule exists where the evidence of other crimes is admitted to show *modus operandi*. (*People v. Howard* (1988), 169 Ill. App. 3d 536, 538, 523 N.E.2d 943, 944.) *Modus operandi* is defined as a "method of working" which refers to a pattern of criminal behavior so distinct that separate crimes can be recognized as the work of the same person, *i.e.*, where the crimes involved possess common peculiar distinctive features so as to earmark both crimes as the handiwork of the defendant. *People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 486-87, 485 N.E.2d 1292, 1297.

The defendant argues that the *modus operandi* evidence was improperly admitted here because there were many differences between the two crimes and the other features of the crimes were not sufficiently peculiar or distinctive to earmark both crimes as the work of the defendant. The State contends that there were sufficient distinctive features common to both crimes to show a *modus operandi*, and, thus, the introduction of the evidence of the prior crime was proper.

The victims and witnesses to this alleged crime and the prior crime both identified the defendant as the attacker. The distinctive features common to both cases were that both victims were females approximately 18 years old; the attacker was seen riding a racing or 10-speed bicycle prior to both attacks; both attacks occurred between 9 p.m. and 10 p.m.; both victims were attacked in an alley and led to a more secluded area; the attacker asked both victims for money before he raped them; the attacker threatened both victims with a six-inch knife; the attacker told both victims to pull down their pants before raping them; the attacker wore blue jeans in both cases; both attacks occurred in Lansing, Illinois; and the defendant was identified as the attacker in both crimes. The differences in the two crimes were that they occurred approximately a month apart from each other, one on May 23, 1983, and the other on June 23, 1983; in one crime the attacker wore glasses and in the other he did not; in one, the victim was grabbed from behind and held at knife point, and in the other, the victim was approached from the front and not held at knife point until she refused his advances. This recital, we believe, indicates that the differences were inconsequential in comparison to the similarities common to both crimes. In so ruling, we note particularly that the defendant was positively identified in court as the assailant in both attacks. Hence, we hold that the evidence was prop-

erly admitted as evidence of a *modus operandi*.

■■ ■ The defendant further contends that the admission of the results of the blood and enzyme testing constituted reversible error because it only established that the defendant was in a group which consisted of approximately 80% of the population that could have been the source of the semen samples taken from the victim. This, he asserts, does not constitute proper admissible evidence. Evidence which has some relevance and fairly tends to prove the offense charged is admissible. To be relevant, evidence need only tend to prove or disprove a disputed fact or it must render the matter in issue more or less probable. *People v. Jones* (1982), 108 Ill. App. 3d 880, 439 N.E.2d 1011.

The defendant contends that the evidence was irrelevant and inadmissible inasmuch as it only tended to put the defendant here in an extremely large category of possible donors. The State again argues that the defendant waived any objection to this evidence as well because he did not object to the evidence at trial during the testimony of the forensic scientist, Judy Welch; he did not object to the evidence during closing argument; and did not object to the evidence in his post-trial motion. Furthermore, the State asserts that even if the issue was not waived, the error, if any, was harmless because the evidence was relevant to corroborate the victim's testimony to the rape, to establish police procedure, and to demonstrate that the defendant could not be eliminated as a suspect. We agree with the State's argument and find that the defendant waived his right to object to the admission of this evidence by not objecting to its admission at trial and by failing to specify this objection in his post-trial motion.

Nonetheless, even if he had preserved this error for review, we believe the admission of the evidence was, in any event, proper. Both parties cite to *People v. Schulz* (1987), 154 Ill. App. 3d 358, 506 N.E.2d 1343, in which this court found that admissions of these types of blood and fluid test results constituted reversible error because they placed the defendant in an inordinately large category, thereby effectively destroying any relevancy they might have. *Schulz*, however, is distinguishable from the facts presented in the case at bar. In *Schulz*, results from two different types of testing were admitted at trial. All of these results served only as evidence that the defendant could not be excluded as the offender, and, at the very best, one of the test results could have been interpreted to establish that the defendant was in a source group that included 20% of the population. In *Schulz*, the test results were a major portion of the

evidence against the defendant, since there was no eyewitness testimony identifying the defendant as the attacker. (*Schulz*, 154 Ill. App. 3d 358, 506 N.E.2d 1343.) The defendant in *Schulz* was the victim's boyfriend and the last one, apparently, to see her alive. Indeed, the *Schulz* court distinguished certain cases in which similar types of test results had been admitted, on the basis that in those cases other evidence corroborated the guilty findings. (*Schulz*, 154 Ill. App. 3d 358, 506 N.E.2d 1343.) Here, there clearly was other sufficient evidence upon which the jury could have based its finding of guilt, namely, eyewitness identification by the victim in this incident and the *modus operandi* crime evidence. Moreover, the limitations on the test results were properly explained to the jury.

We also find the case of *People v. Linscott*, relied on by the defendant, to be equally inapplicable, because the issue there was not based upon the admissibility of the fluid-typing test results, but, rather, was based upon the prosecutor's misstatements of the test results to the jury.[2] *People v. Linscott* (1987), 159 Ill. App. 3d 71, 511 N.E.2d 1303.

▮▮▮▮ The defendant next argues that he was not proven guilty beyond a reasonable doubt. The defendant relies heavily on what he claims was improper identification evidence. The sufficiency of identification evidence is a question for the jurors, and a reviewing court will not set aside a conviction unless the evidence is so unsatisfactory as to raise a reasonable doubt as to the guilt of the defendant. (*People v. Johnson* (1986), 114 Ill. 2d 170, 190, 499 N.E.2d 1355, 1363.) Identification by a single eyewitness is sufficient to support a conviction, provided the witness viewed the accused under circumstances permitting a positive identification. (*Johnson*, 114 Ill. 2d at 189, 499 N.E.2d at 1363.) Discrepancies in identification simply present a

---

[2]The court in *Linscott* held that, on the basis of the prosecutor's misstatements, the case had to be remanded. (*People v. Linscott* (1987), 159 Ill. App. 3d 71, 511 N.E.2d 1303.) In *Linscott*, the court, in *dicta*, addressed the admissibility of the fluid-typing evidence and only noted that, on remand, if the prosecution attempted to admit the fluid-typing evidence, defendant's objection to its admittance would have to be sustained because the evidence placed the defendant in too large a category for the results to have a tendency to prove any fact. The court went on to state, however, that even if the evidence was found to be relevant, the facts presented there made the evidence highly prejudicial to the defendant, who was charged only with murder, and not with rape. *Linscott*, moreover, was complicated by the "plainly doubtful or confusing" testimony of the State's expert witness on the fluid-typing evidence (*Linscott*, 159 Ill. App. 3d at 84 n.6), as well as the fact that there was very little other evidence to support defendant's conviction. Consequently, *Linscott* is distinguishable from the present case.

question of the credibility of the witness and the weight to be given to the testimony. *Johnson*, 114 Ill. 2d at 190, 499 N.E.2d at 1363.

Defendant contends here that the victim's identification was questionable and uncertain and, hence, not admissible. The State asserts that the victim's identification was, as the jury found, certain and credible. The defendant, however, relies on the failure of the victim, Linda Jellema, to identify him in a photo array of six pictures and says this renders the victim's identification questionable and uncertain. However, the photo of the defendant which the victim could not identify was taken nine years before, and in that picture, the defendant's hair was a different color. In the prior *modus operandi* crime admitted by the court, the victim there testified that the defendant wore a dark, long, curly-haired wig, which was how Linda Jellema had described her attacker's hair. Both Linda Jellema and the victim in the prior crime had also described the attacker as being overweight, which the defendant was. Linda Jellema saw the defendant before and during the attack because the area around the ice cream shop and around the alley was lighted by streetlights, and during the attack the defendant was within one foot of her face and faced her. Linda Jellema also identified the defendant both at the lineup and at trial. Any discrepancies in her testimony went to credibility and that was a question for the jury to determine. Further, despite defendant's claim that the lineup was suggestive, the trial court rejected this contention, finding that the victim knew none of the men in the lineup and they were all approximately the same height and weight as the defendant. The fact that the other four men in the lineup were Lansing police officers was irrelevant, for Ms. Jellema recognized none of the four and proper police procedures were followed to protect against any possible bias. Additionally, this identification was corroborated by the identification of the defendant in the prior attack. Hence, there was more than sufficient evidence for the jury to have found the defendant guilty beyond a reasonable doubt.

Finally, the defendant argues that his 25-year concurrent sentences for rape and deviate sexual assault were excessive in light of his alleged potential for rehabilitation. A trial court is also accorded broad discretion in sentencing, and a reviewing court will not disturb a sentence on appeal absent an abuse of discretion. (*Crete*, 113 Ill. 2d 156, 497 N.E.2d 751.) The offenses here, rape and deviate sexual assault, are Class X offenses and the statutory term provided is not less than 6 years' nor more than 30 years' incarceration. (Ill. Rev. Stat. 1983, ch. 38, pars. 11—1(c), 11—3(b), 18—2(b), 1005—8—1(a)(3).) The 25-year term was within this range, the offenses were

committed at knife point, and the trial judge considered factors in aggravation and mitigation, and, thus, under such circumstances, we can find no abuse of discretion.

Accordingly, for all of the foregoing reasons, defendant's convictions and sentences are affirmed.

Judgment affirmed.

BUCKLEY and O'CONNOR, JJ., concur.