THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEOGILDO HERNANDEZ-VALDEZ, Defendant-Appellant.

Second District  No. 2—92—0907

Opinion filed April 26, 1994.

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's

Office, of Elgin, and Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COLWELL delivered the opinion of the court:

After a jury trial, defendant, Leogildo Hernandez-Valdez, was found guilty of one count each of unlawful restraint (Ill. Rev. Stat. 1991, ch. 38, par. 10—3(a) (now 720 ILCS 5/10—3(a) (West 1992))), criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—13(a)(1) (now 720 ILCS 5/12—13(a)(1) (West 1992))), and aggravated criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(a)(2) (now 720 ILCS 5/12—14(a)(2) (West 1992))). The trial court merged the three convictions and sentenced defendant to six years of imprisonment. Defendant appeals, alleging that admission of evidence that the victim was a virgin, in violation of the rape shield statute, prejudiced his right to a fair trial. We affirm.

The charges arose out of an incident which occurred during the early morning hours of October 15, 1991. The victim, M.S., testified that she was 18 years old at that time and lived with her family in Hanover Park. Both she and defendant worked at Kehe Foods in Addison. Their shift ended at 3 a.m. on the morning of October 15. M.S.'s father, who was acquainted with defendant, had instructed M.S. to ask defendant for a ride home.

After they left work, M.S. sat in defendant's car for a few minutes while he poured water from a retention pond into the radiator of his car. Defendant drove out of the Kehe Foods parking lot but shortly thereafter pulled into another parking lot where he added more water to the radiator. Defendant then went over to the passenger side of the car. He tried to kiss M.S. but she struggled and bit him on the lip. Defendant then tried to lower her pants. M.S. hit and pushed defendant away.

M.S. said defendant was finally able to pull down her underwear, pants, and girdle and penetrate her vagina with his finger and penis. She admitted she told police at one point she was not sure if defendant's penis penetrated her vagina but his finger did. M.S. bit defendant's hand when he put it in her mouth. Defendant refused to take her home and hit her in the face with his fist. Defendant then drove M.S. to an unknown location and tied her hands with rope. M.S. tried to scream at passing cars but defendant rolled up her window.

Defendant then drove to another location. He started touching M.S. again and having sexual intercourse with her. Defendant put his fingers in her vagina. M.S. kicked at him and knocked the rearview mirror off of defendant's windshield. Defendant then drove M.S. back to the previous site where M.S.'s purse had fallen out of the car. They found her purse and then defendant finally took her home at 7:30 a.m. In response to the prosecutor's question, M.S. testified that, prior to October 15, 1991, she had never had sexual intercourse with anyone.

M.S. was brought in to the emergency room at Glen Oaks Medical Center at about 9 a.m. on October 15, 1991. Elizabeth Ann Mayer, a registered nurse, testified that M.S. was disheveled and had suffered bruising to the left eye and the left cheek as well as abrasions and swelling to her lips. M.S. also sustained a one-centimeter laceration to her labia. Mayer attended to M.S. from a sexual assault kit.

Defendant testified that he got M.S. home late on the morning of October 15 because he had car trouble. He worked on the car up to two hours but stopped only once on their way home. During this time, M.S. told him she loved him and wanted him to marry her. Defendant refused M.S.'s sexual advances out of respect for M.S.'s father. Defendant pushed M.S.'s face once when she tried to hug him. Defendant said he injured his hands at work and M.S. did not bite them.

Defendant was charged with one count of unlawful restraint and two counts each of criminal sexual assault, aggravated criminal sexual assault, kidnapping, and aggravated kidnapping. The jury found defendant guilty of unlawful restraint and one count each of criminal sexual assault and aggravated criminal sexual assault. The trial court denied defendant's motion for a new trial. The trial court determined that the three convictions should merge into one aggravated criminal sexual assault conviction, a Class X felony. The trial court sentenced defendant to the minimum sentence of six years of imprisonment.

Defendant argues on appeal that, since the evidence against him was extremely close and hinged on his credibility against M.S.'s, the admission of evidence that M.S. was a virgin, in violation of the rape shield statute, prejudiced defendant's right to a fair trial. The rape shield statute requires that, in prosecutions for sex offenses, "the prior sexual activity or the reputation of the alleged victim is inadmissible except as evidence concerning the past sexual conduct of the alleged victim with the accused." (Ill. Rev. Stat. 1991, ch. 38, par. 115—7(a) (now 725 ILCS 5/115—7(a) (West 1992)).) In *People v. Sandoval* (1990), 135 Ill. 2d 159, the Illinois Supreme Court stated

that the language of the rape shield statute "is clear and unambiguous; it leaves no room for introduction of reputation or specific-act evidence from any party in the action" and that "a review of the legislative history supports a construction which prohibits *anyone* from introducing evidence of the victim's sexual history unless it relates to the relationship between the victim and the accused." (Emphasis in original.) 135 Ill. 2d at 171.

The record indicates that defendant did not object at trial to the testimony which he now claims constituted grounds for reversal. Defendant also failed to include this issue in his post-trial motion. Generally, if issues are not so preserved by timely trial objections, any later contentions of alleged error will be deemed to have been waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) An exception exists where the court invokes the plain error doctrine. (134 Ill. 2d R. 615(a).) This doctrine may be applied where the evidence is so close that there is a possibility that an error not objected to may have resulted in the conviction of an innocent person or where there are errors of such magnitude that their commission denied the accused a fair and impartial trial. *People v. Kemblowski* (1992), 227 Ill. App. 3d 758, 762-63.

We do not believe that the evidence in the instant case was so closely balanced that M.S.'s testimony as to her virginity could have caused an innocent man to be convicted. Nor do we believe that this testimony served to deny defendant a fair trial. M.S.'s testimony was credible and many details were substantially corroborated by other testimony from medical personnel and police officers. Defendant's testimony as to the events on October 15 was simply unbelievable. Thus, we decline to invoke the plain error rule and we consider the issue waived.

Assuming, *arguendo*, that defendant had not waived this issue, we believe any error was harmless beyond a reasonable doubt. Previous courts have determined that the admission of evidence as to a sex offense victim's virginity may under certain circumstances be deemed harmless error. (See *People v. Uzelac* (1988), 179 Ill. App. 3d 395, 403 (prosecutor's reference to victim's virginity was harmless because the prosecutor did not dwell on the issue).) We conclude that any such error here was harmless since the prosecutor did not dwell upon the issue of M.S.'s virginity. He asked M.S. one question regarding whether she had performed sexual intercourse with anyone prior to the October 15 incident and M.S. replied in the negative.

Defendant correctly notes that the reviewing court found testimony as to the victim's virginity to be reversible error in *People v. Sales* (1986), 151 Ill. App. 3d 226. However, we believe *Sales* is dis-

tinguishable since the reversal there was based upon cumulative errors in the record, including those in a lengthy closing argument concerning the defendant's race and his alleged homosexuality. The instant case did not contain such prejudicial argument and the evidence concerning M.S.'s virginity was limited to one question and one response. Indeed, the jury's verdict acquitting defendant of many of the charges indicates that M.S.'s testimony as to her virginity did not necessarily bolster her character or her credibility as a witness. We conclude that this testimony did not by itself amount to reversible error. We affirm the judgment of the circuit court of Du Page County.

Affirmed.

INGLIS, P.J., and GEIGER, J., concur.