NOTICE
Decision filed 06/29/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 180027-U

NO. 5-18-0027

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Effingham County. |
| | ) | |
| v. | ) | No. 17-CF-10 |
| | ) | |
| ANNETTE I. WESSELMAN, | ) | Honorable |
| | ) | Allan F. Lolie, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE OVERSTREET delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: The defendant's conviction for unlawful possession of methamphetamine is affirmed where the evidence of her guilt was not closely balanced for purposes of the plain-error doctrine.

¶ 2    On appeal from her conviction for unlawful possession of less than five grams of methamphetamine, the defendant, Annette I. Wesselman, argues that she should be granted a new trial due to the circuit court's failure to strictly comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). For the reasons that follow, we disagree and accordingly affirm her conviction.

1

¶ 3                                   FACTS

¶ 4    On January 9, 2017, the State filed an information charging the defendant with unlawful possession of less than five grams of a substance containing methamphetamine (720 ILCS 646/60(a), (b)(1) (West 2016)). On January 18, 2017, an Effingham County grand jury indicted her on the same charge. On October 4, 2017, the cause proceeded to a jury trial where the following evidence was adduced.

¶ 5    Deputy John Long of the Effingham County Sheriff's Office testified that on January 8, 2017, at approximately 2:30 a.m., he was in his marked squad car patrolling the area around Louie's Country Corner, an "all night" gas station located at the intersection of Lake Sara Road and Illinois Route 32 in Effingham. Long indicated that Louie's was a known location for early-morning drug activity. Long testified that while driving through the parking lot, he observed a black Cadillac that he knew Stacey Tolen regularly drove. Long testified that he further knew that Tolen's driver's license was revoked at the time. Long thus decided to park across the road and wait to see if Tolen would exit Louie's and drive away.

¶ 6    Long testified that he subsequently observed two individuals come out of Louie's. One of the individuals got into the Cadillac, and the other got into a Ford pickup truck that was parked "right next" to the Cadillac. Long explained that he had parked too far away to determine whether the individual who entered the Cadillac was Tolen. Long testified that both vehicles exited the parking lot at the same time and proceeded to drive north on Route 32 with the Cadillac in front of the truck. Long testified that he followed

the vehicles trying to observe whether the driver of the Cadillac was committing any traffic violations.

¶ 7    Long testified that after the Cadillac quickly pulled into the driveway of a residence off of Route 32, he continued to follow the pickup truck. Long testified that he also ran a check of the truck's registration, which revealed a registered address in Beecher City. Long explained that the truck subsequently turned onto "the next road north" and into a rural subdivision. Long testified that he perceived the situation as "suspicious" given that the Cadillac and the truck had left together and then suddenly turned off of Route 32 while he was behind them. With respect to the truck, Long further testified that he believed that it was unlikely that someone would be "going to a residence in that subdivision or on that road at 2:30 in the morning." Long "continued north on 32 and then turned around to go check on [the truck]."

¶ 8    Long testified that after turning into the subdivision, he saw the pickup truck sitting in the driveway of a residence with its lights off and its engine running. Long parked his squad car, approached the truck, and saw that the defendant was the vehicle's sole occupant. When Long asked the defendant why she was parked in the driveway, she stated that she had driven to the residence to meet her daughter's boyfriend, Blaine Koester. When Long asked her whether the occupants of the home would be expecting her, she said "probably not." When asked if Tolen had been driving the Cadillac, the defendant initially indicated that she did not know. She then stated that Tolen had been driving the car and that "he was the only one in the vehicle."

3

¶ 9    Long subsequently went to the front door of the residence and awoke and spoke with Blaine's father, Jude Koester. Jude advised that he was not expecting anyone and that Blaine was not there. Meanwhile, the defendant had exited the truck and began approaching the house. When the defendant met Long along the sidewalk leading to the front door, Long asked her if she had been drinking or had anything illegal in the truck. After answering "no," the defendant consented to Long's request to search the truck.

¶ 10   During a subsequent search of the truck, Long found a small brown bottle containing a crystal residue that later tested positive for methamphetamine. Long testified that the bottle was found inside the defendant's "pink purse," which was located on the center console of the truck. The bottle was inside a "hard black plastic thing" that was "full of vape oils for vape cigarettes." Long indicated that the pink purse also contained additional items such as makeup, the defendant's "identification cards," and "some sort of driver's license." Long testified that when he confronted the defendant about the methamphetamine, "[s]he acted like she didn't know it was there." Long further testified that although the defendant claimed that "she didn't know it was there," she was not "outraged" about it. Long indicated that in addition to the pink purse, there were numerous pouches and containers inside the cab of the pickup truck.

¶ 11   When cross-examined, Long explained that he had been positioned approximately 200 yards away from the entrance of Louie's when he saw the defendant and the driver of the Cadillac exit the store. Long further acknowledged that the defendant had briefly reentered the store after initially walking out with the driver of the Cadillac. Long testified that although he had still been "interested in the Cadillac" when it turned off of

4

Route 32, he had decided to investigate the truck because he found it "odd" that a vehicle with a registered Beecher City address had turned into a rural subdivision that was "a dead end road." Long acknowledged that the defendant had shown him her driver's license while she was sitting in the truck.

¶ 12    Jude testified that he and his wife were startled when Long rang their doorbell on the morning of January 8, 2017. Jude explained that they had no idea what was going on and feared that something might have happened to one of their older children. Jude stated that Blaine had not been living with them at the time and had been residing 10 miles away in Teutopolis. Jude testified that he had not expected to see the defendant that morning and had no idea why she had proceeded to his driveway. Jude further testified that Blaine was 21 years old and had a child with the defendant's daughter.

¶ 13    Deputy Phil Hardiek of the Effingham County Sheriff's Office testified that he had been on duty and had assisted Long on the morning of January 8, 2017. Hardiek indicated that he had initially proceeded to the residence where the Cadillac had parked and had found the vehicle unoccupied. Hardiek then proceeded to Long's location and helped him search the defendant's truck. When cross-examined, Hardiek acknowledged that the cab of the truck contained numerous items of, "for lack of a better word, junk."

¶ 14    The defendant testified that she was 46 years old and lived in Beecher City. The defendant testified that on the morning of January 8, 2017, she had been at Louie's purchasing gasoline and had gone to Jude's to meet Blaine. The defendant explained that she was meeting Blaine because her grandmother and her father had called her advising that someone was breaking into her mother's house. The defendant testified that she had

5

been "under the assumption that whoever was breaking in was still there." Stating that she was aware that Blaine had not been living with Jude at the time, the defendant indicated that Blaine had agreed to meet her at Jude's and then accompany her to her mother's house so she would not have to go there alone. The defendant testified that she knew nothing about the methamphetamine that Long found in her truck and had never seen the small brown bottle until Long showed it to her.

¶ 15   When cross-examined, the defendant testified that her mother lived in Florida but owned a house in Beecher City that was down the road from the defendant's grandmother's house. The defendant acknowledged that she had not called the police to report the alleged break-in at her mother's house, but she claimed that she had advised Long of the situation. The defendant indicated that Long had acted as if he "didn't have much of a concern" about the break-in. The defendant further indicated that the purse she had in the truck was purple, not pink, and that the purse had been on the back floorboard of the truck, not the center console. The defendant testified that the methamphetamine found in her purse was not hers and that she had no idea how it got there. The defendant also stated that she did not "carry a purse" and that her driver's license had not been in the purse in the truck. The defendant testified that she had not been with Tolen on the morning in question and that she had no idea that her truck had been in the vicinity of a black Cadillac. The defendant testified that Long had disturbed Jude "for no reason" and had not questioned her until after he had spoken with Jude. When called in rebuttal, Long testified that the defendant had not advised him that she was meeting Blaine because her mother's house was being burglarized.

6

¶ 16    During closing arguments, the defendant suggested that Tolen had tossed the methamphetamine into the defendant's truck while she was inside Louie's. The defendant maintained that Tolen had seen Long's squad car parked across the road and knew that he was "going to get pulled over" for driving on a revoked license. The defendant further maintained that she would not have given Long permission to search her truck had she been aware of the methamphetamine's presence. The defendant acknowledged that there was "conflicting evidence" as to her stated reasons for being at Jude's on the morning in question. Conceding that Long was "a good witness," the defendant further acknowledged that she had been "a bit nervous" while testifying. Urging the jury to find her not guilty, the defendant contended that the State had failed to prove that she knowingly possessed the methamphetamine found in the truck.

¶ 17    The State argued that the defendant had parked in Jude's driveway attempting to elude Long and that the defendant's claim that she was meeting Blaine so that they could investigate an alleged break-in at her mother's house in Beecher City was nonsensical. The State also emphasized Long's testimony that the defendant had never mentioned the alleged break-in. The State suggested that had Tolen tossed the methamphetamine into the defendant's truck as she claimed, the contraband would not have landed "right into [her] purse." The State further suggested that had Tolen wanted to rid himself of the methamphetamine, he could have disposed of it in the gas station's bathroom or thrown it in the trash. The State maintained that considering the evidence as a whole, the only reasonable explanation for the defendant's possession of the methamphetamine was that it belonged to her.

¶ 18    The jury subsequently returned a verdict finding the defendant guilty as charged. In December 2017, the circuit court sentenced her to a two-year term of probation, and in January 2018, she filed a timely notice of appeal.

¶ 19                                    DISCUSSION

¶ 20    As previously indicated, the defendant contends that she should be granted a new trial because the circuit court failed to strictly comply with Supreme Court Rule 431(b). Acknowledging that she raises the claim for the first time on appeal, the defendant argues that her procedural forfeiture of the issue should be excused under the first prong of the plain-error doctrine. The State concedes that a Rule 431(b) error occurred but insists that the defendant's conviction should stand because the evidence of her guilt was not closely balanced. We agree with the State.

¶ 21    Pursuant to Supreme Court Rule 431(b), during *voir dire*, the trial court must:

"ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

8

¶ 22 Because Rule 431(b) was adopted to memorialize our supreme court's holding in *People v. Zehr*, 103 Ill. 2d 472 (1984) (*People v. Glasper*, 234 Ill. 2d 173, 187 (2009)), the four principles set forth in the rule are commonly referred to as the "*Zehr* principles" (*People v. Rogers*, 408 Ill. App. 3d 873, 875 (2011)).

¶ 23 "Although compliance with Rule 431(b) is important, violation of the rule does not necessarily render a trial fundamentally unfair or unreliable in determining guilt or innocence." *People v. Thompson*, 238 Ill. 2d 598, 611 (2010). As a result, in the absence of evidence that the error resulted in a biased jury, an unobjected-to Rule 431(b) violation is only cognizable under the first prong of the plain-error doctrine. *People v. Sebby*, 2017 IL 119445, ¶ 52. The first prong of the plain-error doctrine allows errors not previously challenged to be considered on appeal if the evidence of the defendant's guilt was so closely balanced that the error alone threatened to tip the scales of justice against the defendant. *People v. Wilmington*, 2013 IL 112938, ¶ 31.

¶ 24 Here, during *voir dire*, the trial court asked the potential jurors whether they agreed with and accepted each of the *Zehr* principles but did not ask whether they understood each principle. The State thus concedes that error occurred. See *People v. Belknap*, 2014 IL 117094, ¶ 46; *Wilmington*, 2013 IL 112938, ¶ 32. However, because the defendant did not object below, and she does not contend that the error resulted in a biased jury, the parties agree that to prevail on her instant claim, the defendant must demonstrate that the evidence of her guilt was so closely balanced that the error alone threatened to tip the scales of justice against her. See *Sebby*, 2017 IL 119445, ¶¶ 48, 52; *Wilmington*, 2013 IL 112938, ¶¶ 33-34. If the defendant demonstrates that the evidence

9

was closely balanced, then she is entitled to a new trial as a matter of law. *Sebby*, 2017 IL 119445, ¶ 78.

¶ 25 Whether the evidence of a defendant's guilt was closely balanced for purposes of the plain-error doctrine is a separate question from whether the evidence was sufficient to convict. *People v. Piatkowski*, 225 Ill. 2d 551, 566 (2007). When determining whether the evidence was closely balanced, "a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Sebby*, 2017 IL 119445, ¶ 53. "A reviewing court's inquiry involves an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Id*.

¶ 26 Here, the defendant argues that the evidence of her guilt was closely balanced because the State did not refute her claim that she was unaware that there was methamphetamine in the purse that was found in her truck. A commonsense assessment of all the evidence in context, however, reveals that the evidence was not close at all.

¶ 27 The small brown bottle containing the methamphetamine was found in the defendant's purse along with other personal effects belonging to the defendant. The defense theory that Tolen tossed the methamphetamine into the defendant's purse rather than disposing of it in a more convenient and less conspicuous manner was questionable at best, especially given that there was no evidence that Tolen had a motive to falsely incriminate the defendant. The defendant's claim that she had driven from Beecher City to Jude's to meet Blaine to investigate a burglary in progress in Beecher City was equally questionable, especially given Long's testimony that the defendant never mentioned that

10

an alleged break-in was the reason she was allegedly meeting Blaine. The circumstances rather demonstrated that the defendant had gone to Jude's in an attempt to elude Long. We further note that although the defendant's truck had been parked "right next" to the Cadillac and that both vehicles had left Louie's at the same time, the defendant testified that she had no idea that her truck had ever been in the vicinity of the Cadillac. Additionally, although the defendant indicated that she had not seen Tolen on the morning in question, Long testified that the defendant had confirmed that Tolen had been driving the car.

¶ 28     Under the circumstances, a commonsense assessment of all the evidence in context supports the State's argument that the only reasonable explanation for the defendant's possession of the methamphetamine was that it belonged to her. Although the defendant suggests that the evidence of her guilt was closely balanced because the jury was presented with two differing versions of events, both of which were credible (see *Sebby*, 2017 IL 119445, ¶ 63; *People v. Naylor*, 229 Ill. 2d 584, 608 (2008)), the record indicates that while Long's testimony was credible, the defendant's was self-serving and "simply unbelievable" (*People v. Hernandez-Valdez*, 260 Ill. App. 3d 644, 647 (1994)). We accordingly deny the defendant's request that she be granted a new trial due to the circuit court's failure to strictly comply with Supreme Court Rule 431(b).

¶ 29                                      CONCLUSION

¶ 30     For the foregoing reasons, the defendant's conviction is hereby affirmed.


¶ 31     Affirmed.

11