NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241552-U

NO. 4-24-1552

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 8, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Warren County |
| BEAU W. ADMIRE, | ) | No. 22CF149 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James R. Standard, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Presiding Justice Harris and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1   *Held*: The appellate court affirmed the trial court, holding (1) the trial court did not err in allowing the victim to remain in the courtroom and sit at counsel's table during the trial, (2) allowing testimony regarding the victim's lack of sexual history was harmless error, and (3) the evidence was sufficient to prove defendant's age, a required element of the charged offenses.

¶ 2   Following a bench trial, defendant, Beau W. Admire, was convicted on two counts of criminal sexual assault (720 ILCS 5/12-13(a)(4) (West 2010)) and one count of aggravated criminal sexual abuse (*id.* § 12-16(f)). (We note the information and sentencing order cite a more recent version of the statute, 720 ILCS 5/11-1.20(a)(4), 11-1.60(f) (West 2022)). The trial court sentenced him to an aggregate term of 28 years in prison. On appeal, defendant contends (1) the court abused its discretion in allowing the victim to remain in the courtroom during the trial, (2) the court erred in allowing the victim to remain seated at counsel's table with the prosecutor during the trial, (3) the court erred in allowing the victim to testify about her lack

of prior sexual history, and (4) the State failed to prove beyond a reasonable doubt defendant was 17 years old or older at the time of the offenses. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. The Charges

¶ 5        On October 28, 2022, defendant was charged by information with two counts of criminal sexual assault (*id.* § 12-13(a)(4)) and one count of aggravated criminal sexual abuse (*id.* § 12-16(f)). All counts were alleged to have taken place between 2010 and 2011, when the victim, M.D., was between 13 and 14 years old and defendant was 17 years old or older and held a position of trust, authority, or supervision in relation to M.D. Count I alleged defendant "committed an act of sexual penetration, by placing his mouth on the vagina" of M.D. (*id.* § 12-13(a)(4)). Count II alleged defendant "committed an act of sexual penetration, by placing his penis in the vagina" of M.D. (*id.* § 12-13(a)(4)). Count III alleged defendant "committed an act of sexual conduct, fondling the breasts and buttocks" of M.D. (*id.* § 12-16(f)).

¶ 6                                    B. The Trial

¶ 7        On May 30, 2024, the case proceeded to a bench trial. Before the trial began, defense counsel made a motion to exclude witnesses from the courtroom. The trial court granted the motion, explaining all witnesses had to remain outside the courtroom until they were called to testify and the court would determine whether any witnesses would be allowed to remain in the courtroom after testifying. Defense counsel then inquired with the court regarding whether M.D. should remain in the courtroom and seated at counsel's table since she was going to be called as a witness. The State argued M.D. was "absolutely entitled" to be in the courtroom because she was the alleged victim. The court reiterated that it was a matter of discretion, not an

"absolute right by statute or otherwise," and allowed M.D. to remain in the courtroom and seated at counsel's table.

¶ 8 The State first called Terry Hepner, an investigator for the city of Monmouth, Illinois, to testify. Hepner testified he first became involved with the case in 2022, after he received a complaint from M.D. involving a sexual assault that had occurred in 2010, when M.D. was 13 years old. Hepner set up an interview between M.D. and a female professional interviewer, who specialized in interviewing both children and adults who experienced abuse in childhood. After observing the interview, Hepner identified defendant as a suspect and learned M.D. met defendant at a mixed martial arts (MMA) gym he owned in Monmouth after M.D. and her siblings, A.D. and Mak. D., began taking classes there in 2010.

¶ 9 The State called both A.D. (M.D.'s brother) and Mak. D. (M.D.'s twin sister) to testify. They both testified when they attended classes at defendant's gym, defendant paid special attention to M.D. The attention was personalized, and defendant touched M.D. inappropriately. They also noticed defendant communicated more personally with M.D. in comparison to other students and observed him place his hands on M.D.'s breasts and buttocks on multiple occasions, moves they confirmed were not normal parts of training or grappling in MMA. A.D. confirmed he had seen messages between M.D. and defendant on M.D.'s phone. The messages included photos of defendant with his shirt off, flirty messages, and communications about gym-related activities.

¶ 10 Mak. D. testified M.D. attended classes at defendant's gym more regularly than she did and even attended private lessons with defendant. Mak. D recalled watching defendant place his hands all over her sister's body, touching her breasts and buttocks with his hands when they would grapple, which were not normal areas of contact for MMA. Mak. D. also recounted

their mother controlled M.D.'s phone, often sending messages to defendant while pretending to be M.D.

¶ 11    Sam D., the children's father, testified about meeting defendant and discussing having defendant move his gym to Monmouth. Defendant ultimately leased space for his gym from Sam's employer. Sam also rented a house to defendant. Per the rental agreement, Sam's children were permitted to use defendant's gym at a discounted rate, and the rent was adjusted accordingly. Because defendant was a coach and director of activities at the gym, Sam told defendant he trusted him to take care of his children and train them appropriately.

¶ 12    M.D. testified she met defendant in 2010, when she was 12 years old and started to train at his MMA gym along with her siblings. She believed defendant to be 31 years old at that time. M.D. trained at defendant's gym about three to four times a week from approximately 2010 until 2014. She recalled there would be anywhere between 10 to 25 people at the gym at a time. M.D. also took private lessons with defendant. She testified their relationship became "sexual very quickly after private lessons started." The first sexual encounter occurred between April 2010 and September 2010. Defendant would grab her breasts, butt, and vagina "above and below" her clothing. When defendant was "groping and fondling" her, he would also "talk dirty" to her. The second encounter was close in time to the first and happened when they met for a private lesson. Their interactions "progressed into fondling, groping, digital penetration, and it also eventually turned into oral sex." This all occurred in the back corner of the gym when no one else was present. She engaged in at least 10 different sexual encounters with defendant during this time frame, all while she was 13 years of age. M.D. was 13 years old for all but one encounter with defendant.

¶ 13    M.D. recounted how her mother controlled her phone and often texted defendant. The texts discussed their activity and when they would meet. In the texts, defendant revealed what he had done to M.D. in graphic detail.

¶ 14    After M.D. had turned 14, she recalled another encounter with defendant at his house sometime between May and June 2011. Her mother scheduled the encounter by text messaging on M.D.'s phone. M.D.'s mother dropped her off at defendant's house to pick up T-shirts for an upcoming tournament. As soon as M.D. went inside defendant's home, he greeted her with a kiss and led her to his bedroom, where he "performed oral sex" on her, "stuck his fingers inside" her vagina, and directed her to "perform oral sex on him." M.D. recalled defendant told her "he was going to stick his penis inside of [her] vagina for just a minute" and, despite her telling him that she did not want to as she was a virgin, he proceeded to do so and ejaculated on her stomach. M.D. disclosed the sexual encounter to her mother immediately afterwards.

¶ 15    At this point during M.D.'s testimony, the State asked M.D. if at the time she was "still a virgin." She answered in the affirmative, and defense counsel objected, arguing "any sort of sexual history was barred by [the] rape shield [statute]." The trial court questioned defense counsel, asking whether that statute included the "absence of" sexual history. Defense counsel responded in the affirmative, arguing the statute barred all mention of sexual history. The State responded it was the "absence of" sexual history, so there was no sexual history being discussed. The objection was overruled. M.D. admitted she did not report any of this to police until after her mother passed away, 10 years after the sexual encounters occurred, because she feared it would destroy her family or her mother would commit suicide because it was her mother who arranged the last "meeting" with defendant.

¶ 16 Defendant did not testify at trial. The trial court found defendant guilty on all three counts and sentenced him to consecutive terms of 10 years, 10 years, and 8 years in prison, respectively. Defense counsel filed motions to reconsider the guilty verdict, for a new trial, and to reconsider defendant's sentence. Counsel argued the State did not prove defendant was 17 years old or older at the time of the offense. Counsel further claimed the court erred by allowing M.D. to remain in the courtroom throughout the trial and allowing her to testify about her lack of sexual history. All motions were denied.

¶ 17 This appeal followed.

¶ 18 II. ANALYSIS

¶ 19 A. Victim Permitted to Stay at Counsel's Table During Trial

¶ 20 Defendant's first and second contentions on appeal are that the trial court erred in allowing M.D. to remain in the courtroom throughout trial and sit at counsel's table.

¶ 21 In Illinois, "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." Ill. R. Evid. 615 (eff. Jan 1, 2011). "Exclusion of witnesses from the courtroom during trial is a time-honored practice designed to preclude one witness from shaping his testimony to conform to that of those who preceded him on the stand." *People v. Johnson*, 47 Ill. App. 3d 362, 369 (1977). However, it is not an absolute right guaranteed to any party that requests it. See *In re N.F.*, 2020 IL App (1st) 182427, ¶ 32 (holding a trial court has discretion to allow the exclusion of a witness regardless of a party's invocation of Rule of Evidence 615). "While some jurisdictions, including the federal courts, consider the exclusion of witnesses to be a matter of right, in Illinois exclusion of witnesses is a matter within the sound discretion of the trial court." *People v. Chatman*, 2022 IL App (4th) 210716, ¶ 67. Accordingly, decisions to exclude

- 6 -

witnesses from the courtroom are reviewed for an abuse of discretion. *People v. Chennault*, 24 Ill. 2d 185, 187 (1962); *In re M.W.*, 2013 IL App (1st) 103334, ¶ 23. "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Hall*, 195 Ill. 2d 1, 20 (2000). The abuse of discretion standard is "the most deferential standard of review available with the exception of no review at all." (Internal quotation marks omitted.) *People v. Coleman*, 183 Ill. 2d 366, 387 (1998).

¶ 22          Here, in addition to the trial court having general discretion to allow witnesses to remain in the courtroom for the duration of trial, the Rights of Crime Victims and Witnesses Act (Act) (725 ILCS 120/4(8) (West 2024)) provides victims have "[t]he right to be present at the trial and all other court proceedings on the same basis as the accused, unless the victim is to testify and the court determines that the victim's testimony would be materially affected if the victim hears other testimony at the trial." In making its decision to allow or exclude M.D. from the courtroom, the court heard arguments from both parties. The court knew M.D. was the victim and was going to testify and rejected the State's argument that she had an *absolute* right, by statute or otherwise, to remain in the courtroom. It is well established that on review, we presume the court knew the law and applied it properly. *People v. Schoonover*, 2021 IL 124832, ¶ 40. "However, when the record contains strong affirmative evidence to the contrary, that presumption is rebutted." *People v. Howery*, 178 Ill. 2d 1, 32 (1997). Defense counsel argues the record reveals the presumption was rebutted in this case because the court neither referred to the Act nor delineated the reasons for its decision. However, when the court noted the victim did not have an *absolute* right to remain in the courtroom, it revealed its understanding of the applicable laws: that even in the context of the Act, the decision to exclude witnesses from the courtroom

was discretionary. See 725 ILCS 120/4(8) (West 2024) (stating "the court determines" whether the victim's testimony would be materially affected by hearing other witnesses' testimonies and whether he or she should remain in the courtroom). The court took time to make its discretionary decision, considered the relevant facts, and heard arguments from both parties as to why M.D. should have been allowed to remain or be excluded from the courtroom. While the court did not expressly state on the record why it made its decision, we cannot conclude its decision was unreasonable, fanciful, or that no reasonable person would take this view. Thus, the court did not abuse its discretion in allowing M.D. to stay in the courtroom.

¶ 23      As for defendant's argument that M.D.'s testimony may have been affected by hearing the testimony of others, this too is without merit. An opportunity for a witness to hear testimony is not enough to show prejudice. Further, given the nature of the offenses and the fact that M.D. was the only witness to the offenses, there can be no concern that she may have shaped her testimony to conform to that of witnesses who may have proceeded her on the stand. See *Chatman*, 2022 IL App (4th) 210716, ¶ 71. Defendant failed to show how M.D.'s testimony may have differed if excluded or how allowing M.D. to remain in the courtroom constituted error.

¶ 24      Secondly, defense counsel argues the trial court erred in allowing M.D. to sit at the counsel's table throughout the trial. This issue was not raised in a posttrial motion, and thus the argument has been forfeited. See *People v. Sebby*, 2017 IL 119445, ¶ 48 ("To preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion."). This court may still review otherwise forfeited arguments under an exception known as the plain error rule. *Id.* Even under the plain error rule, an argument will remain forfeited unless (1) the evidence in a case was so closely balanced that a guilty verdict did not necessarily result from the evidence but instead from a clear or obvious

error or (2) "a clear or obvious error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *People v. Jackson*, 2022 IL 127256, ¶ 19. "Prior to determining whether plain error occurred, *** we must first determine whether any error occurred at all." *People v. Williams*, 2022 IL App (2d) 200455, ¶ 104.

¶ 25    Here, we cannot say there was a clear or obvious error, as it is within the trial court's discretion to permit a material witness to remain in the courtroom and sit at counsel's table. *People v. Leemon*, 66 Ill. 2d 170, 174 (1977). As a victim, it was M.D.'s right to remain in the courtroom. M.D. testified positively and unequivocally about the sexual misconduct, and nothing was presented to contradict her testimony. Notably, this was a bench trial, thus mitigating any of defense counsel's concerns that M.D.'s presence at counsel's table improperly bolstered her testimony. In a bench trial, the judge is presumed to have considered only competent and admissible evidence in reaching his verdict. *People v. Cunningham*, 2012 IL App (3d) 100013, ¶ 14. There is nothing in the record to show defendant was prejudiced by M.D.'s presence at counsel's table. Absent a showing of prejudice by defendant, no abuse of discretion will be found in allowing a material witness to remain in the courtroom. See *People v. Jones*, 108 Ill. App. 3d 880, 886 (1982). The decision was within the sound discretion of the trial court. Thus, we find no error occurred.

¶ 26    Alternatively, defendant claims he was denied effective assistance of counsel because his attorney failed to properly preserve this issue for appeal by failing to file a written motion to exclude M.D. prior to trial. When evaluating a claim of ineffective assistance of counsel, we apply a two-pronged test under which the defendant must prove his counsel's performance fell below an objectively reasonable standard and the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *People v. Caballero*,

126 Ill. 2d 248, 259-60 (1989). The defendant must show that counsel's performance was both objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v. Veach*, 2017 IL 120649, ¶ 30. The burden is on the defendant to satisfy both prongs of the *Strickland* test, and the failure to establish either defeats the claim. *Id.*

¶ 27        Defendant claims the State's case rested entirely on M.D.'s testimony and argues there is a reasonable probability his case would have been decided differently had his counsel filed a written motion to exclude her from the courtroom. We disagree. We find defendant has not made a substantial showing he was prejudiced by trial counsel's alleged deficient performance. As previously stated, the trial court heard arguments from both parties when considering whether to allow or exclude M.D. from the courtroom. After careful consideration of the matter, the court exercised its discretion and determined M.D. should be allowed to remain in the courtroom. Defendant has failed to establish the filing of a written motion to address this issue would have changed the outcome of the court's decision on this matter. Consequently, we are not persuaded counsel was ineffective for choosing not to file a motion to exclude witnesses. See *People v. Holmes*, 397 Ill. App. 3d 737, 741 (2010) ("The failure to file a motion does not establish deficient representation when the motion would have been futile.").

¶ 28                    B. Testimony of M.D.'s Lack of Sexual History

¶ 29        Defendant's third contention is that the trial court erred when the State was allowed to elicit testimony from the victim as to her virginity prior to the last assault by defendant.

¶ 30        While questioning M.D. about one of the assaults by defendant, the State asked, "At that time were you still a virgin?" M.D. answered in the affirmative. Defense counsel

objected, arguing the rape shield statute did not allow testimony about any sexual history. The trial court asked if the "absence of" sexual history was included. Defense counsel believed sexual history was never admissible. The State argued M.D. referred to the "absence of" sexual history. The objection was overruled.

¶ 31 "The Illinois rape shield statute provides, with certain exceptions, that evidence of 'prior sexual activity' of the victim is inadmissible in a trial for criminal sexual assault." *People v. Harris*, 297 Ill. App. 3d 1073, 1088 (1998) (citing 725 ILCS 5/115-7(a) (West 1994)). This court has interpreted this statute to apply to both the defense's and the State's attempts to introduce any evidence of a victim's past sexual history. *Id.* (quoting *People v. Sandoval*, 135 Ill. 2d 159, 170-71 (1990)). Evidentiary rulings, including those made pursuant to the rape shield statute, are reviewed for an abuse of discretion. *People v. Santos*, 211 Ill. 2d 395, 401 (2004). However, courts have determined "the admission of evidence as to a sex offense victim's virginity may under certain circumstances be deemed harmless error." *People v. Hernandez-Valdez*, 260 Ill. App. 3d 644, 647 (1994).

¶ 32 Where the State does not dwell on an issue regarding reference to a victim's virginity, the error is considered harmless. *People v. Uzelac*, 179 Ill. App. 3d 395, 403 (1988). In this case, the State posed one question about M.D.'s virginity in the context of one of several encounters she had with defendant and quickly moved on to allow M.D. to describe the remainder of the encounter. Even if the trial court erred by allowing this testimony, the error was harmless, as it likely would not have changed the outcome because the evidence was not closely balanced. See *People v. Guerrero*, 2021 IL App (2d) 190364, ¶ 88 ("The improper admission of evidence is harmless when there is no reasonable probability the outcome of the trial would have been different had the evidence been excluded."). M.D. testified positively that defendant, as her

coach, to whom she was entrusted, fondled her, groped her, and performed oral sex on her before ultimately advancing to sexual intercourse with her. M.D. was the only witness that provided testimony on this issue, and the court found M.D. credible. There were multiple witnesses who testified, including an investigator who observed M.D.'s initial interview, which involved describing her encounters with defendant, and M.D.'s siblings, who witnessed defendant's behavior toward M.D. The testimony was clear—the touching was intentional and beyond incidental. The evidence of defendant's guilt was overwhelming. Based on the foregoing, we conclude any error in eliciting brief testimony as to M.D.'s virginity was harmless error.

¶ 33                                      C. Sufficiency of the Evidence

¶ 34          Lastly, defendant challenges the sufficiency of the evidence on all three counts, contending the State failed to prove he was 17 years old or older at the time he allegedly committed the offenses. He argues his convictions must be reversed because the State failed to prove him guilty beyond a reasonable doubt of the crimes charged.

¶ 35          "The due process clause of the fourteenth amendment to the United States Constitution [(U.S. Const., amend. XIV)] requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). When a defendant appeals his convictions and argues the State failed to satisfy its burden of proof, a court on review asks " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 36          As the reviewing court, we will not substitute our judgment for the trier of fact on

issues regarding evidence, the weight of the evidence, or the credibility of witnesses. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009). In addition, "[a] criminal conviction will not be set aside on a challenge to the sufficiency of the evidence unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Jackson*, 2020 IL 124112, ¶ 64. "We draw all reasonable inferences in favor of the State." *People v. Cooper*, 2024 IL App (2d) 220158, ¶ 62.

¶ 37        M.D. testified she met defendant in 2010, when she began training at his gym, and he was 31 years old. So long as the trial court found her testimony credible, which it did, then this would be enough to convict defendant. See *People v. Gray*, 2017 IL 120958, ¶ 36 (holding the "testimony of a single witness is sufficient to convict," so long as it is credible); see also *People v. Piatkowski*, 225 Ill. 2d 551, 566 (2007) ("A positive identification by a single eyewitness who had ample opportunity to observe is sufficient to support a conviction."). In addition, when a trier of fact has an opportunity to observe someone, it may draw inferences from that person's appearance, movements, and mannerisms when considering whether a witness's testimony about that person's age was credible. *Cooper*, 2024 IL App (2d) 220158, ¶ 74. The court noted it found M.D.'s testimony to be credible. The court also considered the circumstantial evidence presented during the trial, such as defendant owning and operating an MMA gym and renting a house from the victim's father, all of which support the conclusion he was over 17 at the time of the alleged offenses. As the trier of fact, the court determined the evidence established beyond a reasonable doubt the elements of the crimes charged. The standard in determining if the evidence was sufficient to convict in a criminal proceeding is whether "any rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 2020 IL 124112, ¶ 64. In this case, viewing the evidence in the light

most favorable to the State, we conclude a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, and thus, the evidence was sufficient to support defendant's conviction.

¶ 38                                    III. CONCLUSION

¶ 39            For the reasons stated, we affirm the trial court's judgment.

¶ 40            Affirmed.